IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OVERSTREET ELECTRIC CO., INC.<br>dba OVERSTREET ENGINEERING<br>& CONSTRUCTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-1067C<br>(Senior Judge Loren A. Smith) |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of this Court ("RCFC"), the parties file the following joint preliminary status report:

(a) Jurisdiction

Plaintiff's action arises pursuant to an express contract between Overstreet Electric Co., Inc.

dba Overstreet Engineering & Construction, Inc. ("Overstreet") and the United States, through the Army Corps of Engineers. The action is brought on an appeal from a final decision of the contracting officer that terminated plaintiff for default. Plaintiff states that this Court possesses jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609. Although defendant is currently not aware of any reason why this Court would not possess jurisdiction to entertain plaintiff's challenge to the Corps' termination for default, defendant believes that this Court may lack jurisdiction to entertain any claims for monetary relief because plaintiff has not submitted a termination for convenience settlement proposal.

(b) Consolidation

The parties do not believe that this case should not be consolidated with any other case.

(c) Bifurcation

The parties are not aware of any reason why liability and damages should be tried separately.

(d) Deferral

The parties do not believe that further proceedings in this action should be delayed pending consideration of another case by this Court.

(e) Remand/Suspension

The parties do not intend to request remand or suspension.

(f) Joinder

The parties do not believe that additional parties should be joined.

(g) Dispositive Motions

While the parties agree that it is unlikely that dispositive motions will be filed, the parties requests that on or before 30 days after the conclusion of discovery, they be allowed to file a status report regarding the appropriateness of filing dispositive motions.

(h) Relevant Issues

Plaintiff's Statement Regarding The Relevant Issues

Overstreet's Factual Issues

1.) Whether the Corps of Engineers performed an adequate prebid investigation of the site that was sufficient to adequately describe the conditions for bidding purposes.

2.) Whether the Corps of Engineers provided incorrect and misleading ground elevations in the plans and specifications.

3.) Whether the field conditions prevented productive and timely harvesting of material for placement on the embankment.

4.) Whether field conditions prevented the construction of the underdrain system in the manner envisioned by the contract plans and specifications.

5.) Whether the Corps of Engineers provided incorrect and misleading information regarding the elevation of the water table in the plans and specifications.

6.) Whether the site conditions effectively precluded dewatering of the site as specified by the Corps of Engineers.

7.) Whether the plans and specifications incorrectly represented that the contractor could expect to find 500,000 to 600,000 of dry and crusted material "immediately available" to be used as borrow.

8.) Whether the discharge of dredged material by a contractor performing a dredging contract for the Corps of Engineers in the adjacent disposal area, Area 12B, exacerbated the wet conditions in Area 12A and interfered with productive borrow operations.

9.) Whether the plans and specifications were misleading by representing that the borrow material would be primarily silty sand.

10.) Whether the mere reclassification of materials considered to be "unsuitable" according to the plans and specifications as "suitable" was sufficient to overcome the inherent properties of those materials that made them "unsuitable" in the first place.

11.) Whether the Corps of Engineers granted timely and appropriate time extensions to

the contractor to account for delays to the project caused by differing site conditions and defective specifications.

12.) Whether the site conditions were too wet to permit the resumption of productive borrow operations after the suspension of work was lifted on May 9, 2003 and continuing until the termination for default on July 29, 2003.

13.) Whether the Corps of Engineers failed to cooperate with the contractor in attempting to deal with the field conditions after the suspension of work was lifted on May 9, 2003.

14.) Whether the Corps of Engineers was unreasonable in allowing the contractor only one week to implement and commence the new method of operation that had been agreed to by the parties on July 21, 2003.

Overstreet's Legal Issues

1.) Whether Overstreet reasonably relied on the contract plans and specifications in the preparation of its prebid estimate and in the preparation of its plan to perform the work.

2.) Whether the site conditions were materially different from those represented in the plans and specifications.

3.) Whether the contract plans and specifications were defective and misleading.

4.) Whether the Corps of Engineers breached its duty to cooperate.

5.) Whether the totality of the circumstances indicates that the Contracting Officer's termination for default was unreasonable, lacking a rational basis, arbitrary and capricious.

6.) Whether Overstreet was entitled to time extensions to account for delays to the

project

caused by differing site conditions, defective specifications, and the impact of the government-directed suspension of work.

7.) Whether the Contracting Officer's conclusion that the contractor was in default of the schedule to complete the project was unreasonable because the Contracting Officer had failed to extend the contract completion date for excusable delays.

8.) Whether the abrupt termination of the contract for default after allowing only one week for the contractor to implement an agreed-upon change in methodology was an abuse of discretion, arbitrary and capricious.

9.) Whether Overstreet suffered damages as result of differing site conditions, defective specifications, and the Contracting Officer's unwarranted and wrongful termination for default.

Defendant's Statement Regarding The Relevant Issues

Government's Factual Issues

1) Whether Overstreet's pre-bid site inspection was adequate to identify variances that it

believed to be significant in the planning and establishment of the bid pricing.

2.) Whether the Corps' aerial survey was reasonably accurate and/or within industry standards.

3.) Whether Overstreet failed to adequately drain and dewater the job site, essential to Overstreet's ability to efficiently harvest borrow material for placement upon the dike, ramps, and bird islands.

4.) Whether Overstreet failed to utilize borrowing methods, available or allowable under

the contract, that would have optimized production.

5.) Whether at the time of its bid, Overstreet planned to harvest borrow material from half

of the available borrow area and whether this was a reasonable plan, based upon the available information.

6.) Whether the Corps represented that draining the project site might require the use of

drainage pumps or other dewatering methods.

7.) Whether Overstreet, as the result of its own inefficiencies, inadequate planning, and

scheduling of its resources, or the failure to follow its own work plan, was unable to excavate and placed borrow material at a rate necessary to complete the project within the contractual requirements.

8.) Whether, as Overstreet asserted, it was impossible to install the contract specified underdrain lines in the disposal area.

9.) Whether conditions at the site were such that meaningful borrow excavation could not occur.

10.) Whether Overstreet failed to meet its schedule because of lack of effective on-site supervision, lack of adequate equipment, lack of experienced personnel, or for other reasons for which Overstreet was responsible.

11.) Whether Overstreet's excavation subcontractor's failure to return to the job site after May 9, 2003, was warranted.

12.) Whether the dewatering ditches would not remain open because of wet conditions or because of other reasons for which Overstreet was responsible.

13.) Whether the Corps directed the plugging a 30" underdrain outfall pipe that exacerbated wet conditions at the project site.

14.) Whether it was impossible to install the underdrain system "in the dry" utilizing the

traditional methods of installation indicated in the contract.

15.) Whether new weirs could not be installed in the dry as indicated in the contract.

16.) Whether dried or crusted materials in the amounts indicated by the contract were available.

17.) Whether additional dried or crusted material could have been harvested using methods specified in the contract.

18.) Whether suitable fill and backfill materials were available at the project site as indicated in the contract.

19.) Whether wet conditions at the job site were exacerbated by the inflow of water from an adjacent disposal area.

20.) Whether additional fill materials were required because of excessive settlement of materials during construction.

21.) Whether costs associated with compliance with the Corps' directive regarding the use of an alternate disposal area to obtain suitable borrow material were covered by a

modification to the contract.

22.) Whether the Corps' directive to harvest OH material for placement upon the dike caused delay.

23.) Whether the Corps represented that the project site could be gravity drained.

24.) Whether Overstreet failed to begin installation of the underdrain system in a timely

manner, which exacerbated wet conditions at the project site.

25.) Whether Overstreet failed to install valves in the underdrain system in a timely manner.

26.) Whether a lack of valves in the underdrain system caused the Corps to direct the plugging of the 30" underdrain outfall pipe.

27.) Whether Overstreet failed to connect the underdrain system to the outfall pipe in a timely manner, and, if so, whether that failure exacerbated wet conditions at the project site.

28.) Whether the Corps represented that drainage of the project site would be allowed to proceed without the exercise of control over the amount and/or the solids content of the water flowing from the project site.

29.) Whether, after the suspension of work was lifted on May 9, 2003, Overstreet submitted a reasonable completion of work schedule.

30.) Whether, after the suspension of work was lifted on May 9, 2003, Overstreet took appropriate action to survey the borrow area to enable it to know where to excavate material from and where to place it.

31.) Whether, after the suspension of work was lifted on May 9, 2003, Overstreet took appropriate action to mobilize the personnel and equipment necessary to effectively prosecute the remaining work required under the contract, and whether personnel and equipment on-site after May 9, 2003 was comparable to personnel and equipment on-site prior to the suspension of work.

32.) Whether, during the period May 9, 2003 to July 29, 2003, Overstreet made sufficient

progress upon work remaining under the contract to indicate completion of contract requirements within a reasonable period of time.

33.) Whether, during the period May 9, 2003 to July 29, 2003, Overstreet provided effective on-site supervision of work remaining under the contract.

34.) Whether the Corps' directive to suspend work on borrow and dike construction precluded Overstreet from prosecuting other work tasks, such as ditching and other dewatering operations.

Legal Issues

1.) Whether the contracting officer's decision to terminate Overstreet for default was procedurally correct.

2.) Whether Overstreet was in default at the time the contracting officer terminated Overstreet for default.

3.) If in default, whether Overstreet can prove by the preponderance of the evidence that

its default should be excused.

4) Whether this Court possesses jurisdiction to entertain Overstreet's claims for money damages.

5) In the event that the termination for default is not sustained, and assuming that the Court determines that it possesses jurisdiction to entertain Overstreet's claims for money damages, whether Overstreet is entitled to recover money damages.

(i) Settlement

The parties anticipate meeting in the March - April time frame to consider settlement.

(j) Trial

If this case does not settle, the parties will proceed to trial that is expected to last from five to ten days. The parties agree that an expedited trial pursuant to paragraph 6(b) of Appendix G is not warranted.

(k) Electronic Filing

The parties are not aware of any special issues regarding electronic case management needs.

(l) Additional Information

The parties request that the trial in this case take place in Savannah, Georgia. The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Discovery Schedule

1. Exchange of documents: The parties have already exchanged documents.

Additional

documents, if needed, will continue to be exchanged informally.

2. Completion of fact witness depositions by June 30, 2005

3. Designation of expert witnesses by January 15, 2005, and exchange of expert witness reports by August 1, 2005.

4. Completion of expert witness depositions by October 31, 2005

5. Completion of all discovery by October 31, 2005

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Michael H. Payne, Esq.
MICHAEL H. PAYNE, ESQ.
Starfield & Payne, P.C.
220 Commerce Dr., Suite 250
Fort Washington, PA 19034

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Commercial Litigation Branch
Civil Division
Department of Justice

215-542-7070
215-542-0723 (Fax)

Attorney for Plaintiff

Dated: December 12, 2004

Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-1011
(202) 307-0972 (Fax)

Attorneys for Defendant

Dated: December 12, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2004, a copy of the foregoing Joint Preliminary Status report was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

s/ Leslie Cayer Ohta

__________________________________________